**HOLMAN, Plaintiff, v. ANDREWS, Exr., Defendant.**

Common Pleas Court, Butler County.

No. 74414. Decided May 6, 1957.

J. B. Connaughton of Connaughton & Schwab, Geo. C. McCandless, for plaintiff.

Richard Berridge of Andrews & Berridge, Paul A. Baden, for defendant Executor and Richard Wilmer.

## OPINION

By CRAMER, J.

This cause, being one for specific performance of a contract for a sale to plaintiff by defendant's decedent of her shares of stock in the Inside Realty Company, Inc., is before the court upon the pleadings, evidence, and memoranda of counsel.

Little, if any, controversy exists between the parties concerning these facts:

Lillian Jacoby, defendant's decedent, and hereinafter referred to as decedent, on June 12, 1952 executed and delivered to plaintiff the following paper writing:

"Middletown, Ohio June 12th, 1952

To whom it may concern:

This is to certify that I have made arrangements with Mr. J. W. Holman to act as my business manager in my affairs, both personal & real estate, and to make any investigation which I may deem necessary, in connection with my holdings.

I hereby give J. W. Holman Power of Attorney to act in my behalf.

Signed Lillian Jacoby

Witness Jack DeRosett
Witness Cecil V. Short
Date June 12, 1952"

On September 2, 1952 the deceased and plaintiff executed a paper writing marked "Sales Contract," in words and figures as follows:

"Sales Contract
Between

Mrs. Lillian Jacoby, hereafter known as the First Party and J. W. Holman hereafter known as second party.

Middletown, Ohio
Sept. 2nd, 1952

First party hereby agrees to sell and transfer all of her interests and stock in the Inside Realty Company, Inc. of Hamilton, Ohio, Butler County, to J. W. Holman second party. The stock consists of 75 (seventy-five) shares of stock which was purchased from the Walter Harlan Estate. The assets of the Co. being lots or part of lots Nos. 110, 140, and 169 in the City of Hamilton, Ohio. Second party agrees to pay One Dollar and other valuable considerations. Second party is to give First party a Promissary [sic] note which is a part of this contract. Second party further agrees to do everything possible to protect the Second Mortgage which First party holds on above real estate.

First Party declares that she owns one half interest in the above Company, is president of the Company, and signs all checks given out by the Company.

Signed by First Party
Lillian Jacoby
Signed by Second Party

Witness_____
Witness_____
Date: Sept. 2, 1952"

J. W. Holman

**558**

On September 19, 1952 said decedent, through her then counsel, caused a letter to be sent to plaintiff, copy of which reads as follows:

"September 19, 1952

Mr. Joseph W. Holman
6 Alameda Circle
Middletown, Ohio

Dear Mr. Holman: .

You will recall at our last meeting the week of September 1st, I told you that the so-called contract you were proposing to me would not be made and that I did not wish to sell my stock in the Inside Realty Company, Inc.

At that time I attempted to return a note to you and take up your copy of the contract, all of the copies of which contract you had in your possession for several days.

Several days ago you arranged a power of attorney from me to you so that you could investigate all of the financial matters of the Inside Realty Company, Inc. and you were serving as my attorney-in-fact in a capacity of trust, which I feel you have violated and I am herewith tendering back to you your note and requesting your copy of the so-called contract, which was obtained through fraud and misrepresentations to me after your investigation of the financial affairs and details of the Inside Realty Company.

You will also hereby take notice that I hereby revoke my Power of Attorney to you and you are without authorization to do anything further for me.

Yours very truly,
(Signed)    Lillian Jacoby"

Lillian Jacoby died July 30, 1955 and by her Will, which was executed December 17, 1954 and probated August 17, 1955, specifically bequeathed all of her shares of capital stock of the Inside Realty Inc. to Richard A. Wilmer.

On November 25, 1955 plaintiff demanded of the defendant as the Executor of Lillian Jacoby's estate that he carry out the terms of this agreement between him and Lillian Jacoby respecting the sale to him of her shares of stock in such corporation and tendered the sum of $5,969.04, being the principal sum of $5,000.00 with interest thereon from September 2, 1952 to November 25, 1955.

The executor rejected the claim and refused to transfer the stock on March 6, 1956. Suit was then instituted against the executor on March 30, 1956, and thereafter (at the time of trial), on application of Richard A. Wilmer, he was made a party defendant in this cause.

The defendant executor, in his answer, sets up a number of defenses and they can be summarized as follows:

1.) The contract is too uncertain, incomplete and indefinite to be specifically enforced and that no consideration was given by plaintiff.

2.) That a fiduciary or trust relationship existed between plaintiff and decedent at the time the contract was executed, plaintiff being then her agent holding a power of attorney from her. That plaintiff violated the duty he owed to his principal of good faith and loyalty and

breached the trust and confidence placed in him by decedent, and violated such fiduciary relationship in that he made use of the same to secure information relative to the real value of decedent's stock and thereupon induced her to agree to sell the same at a price greatly below its true and actual value and for a grossly inadequate price.

3.) That Lillian Jacoby revoked said agreement and canceled the same and plaintiff, by his conduct, acquiesced in such revocation and is estopped to deny such cancelation.

4.) That plaintiff is guilty of laches and is thereby precluded from being granted the equitable relief he seeks.

5.) Plaintiff has an adequate remedy at law by way of an action for damages.

The defendant Wilmer, in his memoranda, relies mainly upon the defenses of revocation and abandonment of the purported contract and laches, in order to defeat plaintiff's action.

We take up first the defense asserted; namely, that the contract is too uncertain and indefinite to be specifically enforced.

We find no fault, but rather, are in accord with the authorities cited by the executor in support of this claim. It is our view, however, that the instrument sought to be enforced is not indefinite or uncertain, unclear, or incomplete.

We can determine therefrom "what must be done to constitute performance." (49 Am. Jur., Sec. 22.) We have little difficulty in determining from the evidence that the price the parties agreed upon for the sale of the stock was $5,000.00 and payment was to be made by delivery of a promissory note in that amount.

It is true, the agreement itself does not recite that the note was to be in the sum of $5,000.00 but reference to a note is made therein and the amount thereof is supplied by the evidence. The letter of Lillian Jacoby to plaintiff, in which she returned his note (which has been properly identified) constitutes an admission by her that such note was the one referred to in the agreement.

The fact that the note does not call for a specific payment date, nor that the name of the payee is not inserted therein, is, in our opinion, of no consequence in connection with this defense. This claim, considering the instrument itself in the light of other evidence, is, in our opinion, untenable.

Did plaintiff violate the trust and confidence Lillian Jacoby placed in him as her attorney in fact by entering into the agreement with her to purchase all her stock in the corporation, into the financial affairs of which, his trust duties called for him to delve?

We say "merely entering into the agreement" for the reason that there is no direct evidence that the plaintiff used his relationship with the decedent to induce her to enter into an agreement she would not otherwise have entered into.

It is probably reasonably inferable from the evidence that plaintiff decided to buy the stock as a result of what he discovered to be its value, by reason of his power of attorney, though the evidence respecting what investigation he made or learned therefrom is indeed meagre.

Here, plaintiff's conduct, in purchasing his principal's stock, is not subject to the condemnation ordinarily accorded that of a fiduciary who seeks to deal with matters confidentially entrusted to him. This for the reason that plaintiff's principal, the decedent, knew, of course, that plaintiff was the purchaser of her stock since she, in writing, agreed to sell it to him. In other words, plaintiff disclosed to her that he was the purchaser. Does this, therefore, alter the situation and relieve plaintiff's acts from the close scrutiny which would otherwise be given them?

In Vol. 2, Am. Jur., Sec. 260, pages 209-10, we find the following.

"Due to the confidential relation between the principal and his agent, a court of equity will scrutinize carefully a purchase by the agent directly from his principal and grant relief unless full disclosure has been made by the agent of all facts of which he had knowledge respecting the value of the property. If the agent makes a full disclosure of all the material facts and the sale is free from fraud, the transaction will be sustained. **In such case, however, the burden is upon the agent to show that the principal had knowledge, not only of the fact that the agent was buying or interested, but also, of every material fact known to the agent which might affect the principal** and that, having such knowledge, he freely consented to the transaction."

When we consider the evidence respecting the value of decedent's stock, which shows it to be, even then, worth many times $5,000.00, we cannot help but feel that plaintiff did not disclose every material fact known to him which might affect his principal.

Decedent's letter of September 19, 1952 to plaintiff, in which she seeks to avoid the contract she made with him, supports the claim that a full disclosure was not made to her. As a matter of fact, that letter suggests that actual misrepresentations were made in connection with what plaintiff learned by reason of his being decedent's attorney in fact.

We are therefore of the opinion that the plaintiff has failed to discharge the burden of proof which the law casts upon him of showing that the decedent had knowledge "of every material fact known to the agent which might affect the principal, and that, having full knowledge, she freely consented to the transaction."

This failure on the part of the plaintiff to sustain such burden of proof is sufficient, in our opinion, to deny him the equitable relief he seeks. However, there is a further, additional, and perhaps even more compelling reason why specific performance should not be decreed, namely, laches on the part of plaintiff.

On September 19, 1952 the decedent wrote plaintiff and she returned to him his note and disclosed an intention to abandon, or at least consider herself not bound by the paper writing she entered into with plaintiff. Lillian Jacoby died within but a few months of three years following the receipt of said letter by plaintiff. It was not until November of 1955, more than three years after the receipt of such letter by plaintiff, that he took any action whatsoever upon or under said agreement.

We do not find that by such inaction plaintiff accepted decedent's offer to abandon or relieve the parties from the obligation of such agree-

ment. Perhaps even if such acquiesence on the part of plaintiff could be construed as an acceptance of such offer, still there would be the problem of no consideration for the agreement to abandon such contract   Such claims, however, do not preclude the application of the doctrine of laches.

We must not lose sight of the fact that this is purely an equitable action and not one in law wherein plaintiff seeks to recover damages for breach of contract. The defense of laches is peculiarly adapted to an equitable action and where found to exist ordinarily precludes affirmative action by an equity court.

We are particularly impressed with the argument made here that chancery will not grant specific performance where there has been a great change of circumstances or in the situation of the parties. See **Vol. 37, O. Jur., page 80.**

Here, by reason of plaintiff's failure to act, to secure the stock he claims he purchased during the lifetime of the decedent, Lillian Jacoby was lulled into a feeling that there was no impediment to her specifically bequeathing this stock, and she did by her last will and testament. To that extent plaintiff's inaction was productive of a serious change in circumstances.

Furthermore, by waiting until after decedent's death, plaintiff was instrumental in making unavailable decedent's testimony and any other evidence she perhaps could have furnished. The fact that plaintiff's mouth was closed at the time of the trial by reason of decedent's death, is no answer to the situation he thus produced. Certainly here was a serious change of circumstances wrought entirely by plaintiff's conduct.

In Pomeroy Equity Jurisprudence, 5th Edition, 2nd Vol., Page 179, the following is stated:

"Laches in legal significance is not mere delay but delay that works disadvantage to another. So long as the parties are in the same condition it matters little whether one presses a right promptly or slowly within the limits allowed by law. But when knowing his rights he takes no steps to enforce them until the condition of the other party has in good faith become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes unequitable."

In the case of In Re Daub, 157 Atlantic, 908, cited by the defendant executor, it was stated:

"We have frequently said that where there was no fixed period during which action must be taken, that a long delay, during which important evidence was lost by death, will result in the refusal of equitable relief."

It is further asserted by the defendants that there was such a material change in the value of this stock, that is, that it increased in value between the date of the contract and the death of the decedent, that the same constituted such a change in circumstances which should preclude the granting of specific performance.

In **Vol. 37 O. Jur., Sec. 59, at page 80,** we find the assertion that

"It has been held that a material change in the value of property may be a change in circumstances sufficient to lead a court of equity to deny specific performance of a contract."

While the evidence does show that this stock was considerably more valuable than its purchase price of $5,000.00, it is our opinion that the evidence does not disclose that there was such a rise in value from the date of the agreement to sell and the death of the decedent as to constitute a sufficient change in circumstances to deny specific performance As a matter of fact, such a claim seems inconsistent with that of the defendants to the effect that plaintiff in his fiduciary capacity discovered how much more valuable the stock was than the sum of $5,000.00, the then sale price thereof.

We conclude, by reason of all of the foregoing, that here equity should not come to the relief of the plaintiff, and that the facts here are such as to require the denial to him of the equitable relief by way of specific performance, which he seeks here.

Accordingly, we find upon the isues made in this cause in favor of the defendants and against the plaintiff.

If plaintiff has any enforceable rights under the instrument here in question, he must pursue the same elsewhere than in a court of equity.